UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 06-227 |
| | : | |
| v. | : | |
| | : | |
| DARNELL JACKSON, ET. AL | : | |

**GOVERNMENT'S NOTICE OF INTENT TO ADMIT CERTIFIED PUBLIC RECORDS
AND BUSINESS RECORDS**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, Jeffrey A. Taylor, hereby provides notice of its intent to admit certain Self-Authenticating Documents, Domestic Documents Under Seal, Certified Copies of Public Records, and Certified Domestic Records of Regularly Conducted Activity, pursuant to Federal Rules of Evidence 803(6), 803(7), 803(8), 803(10), 803(14), 803(22), 902(1), 902(4) and 902(11) as follows:

    A.    DOCUMENTS TO BE ADMITTED

    1.    Certified Prior Convictions and other related documents of Troy Hopkins:

        a.    Prince George's County Circuit Court, Case No. CT950136X, Guilty Plea to Possession with Intent to Distribute Cocaine was entered on November 3, 1995, before Judge Casula, and sentencing took place the same day. Rosalyn Pugh, Clerk, authenticated and placed a court seal on this record on August 14, 2006. Notice of this prior conviction was previously provided to counsel for Mr. Hopkins.

        b.    Prince George's County Circuit Court, Case No. CT962486X, Guilty Plea

1

        to Possession with Intent to Distribute Cocaine was entered on May 13, 1998, before Judge McKee, and sentencing took place the same day. Rosalyn Pugh, Clerk, authenticated and placed a court seal on this record on August 22, 1996. Notice of this prior conviction was previously provided to counsel for Mr. Hopkins.

    c.    Prince George's County Circuit Court, Case No. 980088A, 17-Count Indictment charging multiple drug-related violations of the Maryland Code, Sentencing following Guilty Plea to Count I, Possession with Intent to Distribute Cocaine, took place on April 20, 2000, Judge McKee. Peggy Magee, Clerk, authenticated and placed a court seal on this record on June 19, 2007. Notice of this discovery was provided to counsel for Mr. Hopkins previously.

    d.    Prince George's County Circuit Court, Case No. CT020270X, Guilty Plea to Second Degree Assault, a felony, took place on June 26, 2002, before Judge Spellbring, and sentencing took place on September 27, 2002, before the same judge. Rosalyn Pugh, Clerk, authenticated and placed a court seal on the record on August 22, 2006. Notice of this discovery was provided to counsel for Mr. Hopkins previously.

    2.    Tax Returns, or Tax Records of Lack of Records (of Tax Return) for John Downs, III, Bernie Hargrove (records of filing), Troy Hopkins (records of not filing), and Lawrence Bryant (records of filing and the brief payment of a moderate sum of unemployment to Lawrence Bryant in March 2005) for the period of 2004 through 2006.

3.  Certified Prior Conviction of Lawrence Bryant for Attempted Possession with Intent to Distribute Heroin in District of Columbia Superior Case No. F-13588-98, Karen Archer, Clerk., Guilty Plea March 28, 1990, and Sentencing May 31, 1990.

4.  Business Records of Western Union, Traveler's Moneygram, reflecting the payment of money to members of the conspiracy by other members of the conspiracy, all of which have already been provided in discovery.

5.  Business Records of flight reservations, travel, payment methods, and manifests for JetBlue Airlines, Southwest Airlines, Continental Airlines, America West Airlines and United Airlines.

6.  Business records of weapons registration and tracing from the Bureau of Alcohol, Tobacco, Firearms, and Explosives, and the Maryland State Police regarding weapons recovered at 5601 Lundy Drive, Lanham, Maryland, and from Lawrence Bryant's home. These records have been provided to counsel in discovery.

7.  Business records of phone subscriber for telephones used by all defendants during the period of the wiretap. Subscriber record information has been previously provided to counsel in discovery.

8.  Business records of the Commerce Casino, and security videotape of the arrest of Troy Hopkins, when received and if necessary at trial. These records have not been provided to Government's counsel but have been described to defense counsel and will be made available to counsel no later than September 13, 2007.

9.  All of the self-authenticating documents will be available in the United States Attorney's Office for counsel's review, and all discovery has been provided, except as noted

above.

      B.      CRAWFORD DOES NOT APPLY TO NON-TESTIMONIAL RECORDS

Although the defense has not yet challenged the admissibility of such documents, Government's counsel are aware that Crawford v. Washington, 541 U.S. 36 (2004), has generated some confusion on the issue of admissibility of certain records. The Government does not want to have to slow or stop the trial to litigate any issue that may arise and therefore offers a brief on this issue in advance. As a threshold matter, the government notes that many of the records will not be offered for the truth of the matter asserted, a necessary element of hearsay, but many, such as records of no tax filing, will be offered for the truth of the matter asserted therein.

The limitations of hearsay set for in the Crawford decision are not applicable to the records of which the Government provides notice.

      1.      IRS Records of No Record Are Admissible.

Most courts that have addressed whether comparable "certificates of no record" are testimonial have concluded that, where the underlying records are not testimonial, the related certificates of no record are also not testimonial. In United States v. Bryant, 70 Fed. R. Evid. Serv. 533, 2007 WL 1700107, *2-3 (W.D. Va. 2006), the Court held that Internal Revenue Service affidavit certifying non-existence of tax record was not testimonial. Further, four federal circuit courts have held to be non-testimonial certificates of the nonexistence of records in official immigration files, where those certificates were admitted to show that a previously deported alien had not been authorized to reenter the United States. See, e.g., United States v. Urqhart, 469 F.3d 745, 748-749 (8th Cir. 2006); United States v. Cervantes-Flores, 421 F.3d 825, 830-834 (9th Cir. 2005), cert. denied, 547 U.S. 1114 (2006); United States v. Mendoza-Orellana,

133 Fed. Appx. 68, 70 (4th Cir. 2005) (unpublished); Rueda-Rivera v. United States, 396 F.3d 678, 679-680 (5th Cir. 2005).[1]  State appellate courts have reached the same conclusion about certificates of no record in other contexts.  See, e.g., Michels v. Com., 624 S.E.2d 675, 678-680 (Va. App. 2006) (holding that certificates stating that no record could be found that two purported companies were licensed to do business are not testimonial); State v. N.M.K., 118 P.3d 368, 372-373 (Wash. App. 2005) (holding that certificate of licensing agency that no record of driver's license for defendant could be found is not testimonial).  There are several reasons why certificates of no record are not testimonial.

First, such certificates do not resemble ex parte examinations by judicial officers – the primary evil at which the Confrontation Clause was directed – or any of the other examples of testimonial statements given by the Supreme Court in Crawford.  Cervantes-Flores, 421 F.3d at 832.[2]  "'Police interrogations' and 'prior testimony at a preliminary hearing, before a grand jury,

---

[1] But cf. United States v. Salinas-Valenciano, 220 Fed. Appx. 879, 884-885 (10th Cir. 2007) (unpublished) (Court reverses conviction for reentry into United States after deportation, where defendant challenged, on Confrontation Clause grounds, admission of certificate of nonexistence of record ("CNR") of permission to reenter United States, and government failed to argue that CNR was not testimonial or that admission was harmless; however, the Court observed that: "the application of the Confrontation Clause to purely ministerial documents whose only purpose is to establish the foundation for admission of nontestimonial evidence is unclear, and even if the admission of such evidence is error, it may be harmless by nature").  Cf. also United States v. Earle, ___ F.3d ___, 2007 WL 1616515, *7 (1st Cir. June 6, 2007) (finding it unnecessary to decide whether CNR is testimonial because its admission was harmless beyond a reasonable doubt; noting, however, that, "[g]iven both the common law and the Supreme Court's limited guidance on what is testimonial, we cannot easily dismiss either Earle's or the government's arguments as without merit.").

[2] Before Crawford, the "clear majority" of courts recognized that the admission of certificates of no record did not implicate the primary concerns that led to the adoption of the Confrontation Clause.  See, e.g., United States v. Neff, 615 F.2d 1235, 1242 (9th Cir. 1980)(collecting cases).

or at a former trial' all involve live out-of-court statements against a defendant elicited by a government officer with a clear eye to prosecution." Id. at 833-834 (citing Crawford, 541 U.S. at 56). A certification "that a particular record does not exist in [an official file] bears no resemblance to [those] types of testimonial evidence." Id. at 834; see also Rueda-Rivera, 396 F.3d at 680 (certificates "reflecting the absence of a record . . ., [do] not fall into the specific categories of testimonial statements referred to in Crawford"); Michels, 624 S.E.2d at 470 (Crawford holds that the primary objective of the Confrontation Clause is to preclude admission of formal statements obtained by ex parte examination or interrogation initiated by government officials in anticipation of criminal litigation; certificates of no record are not prepared in the same manner as ex parte examinations, and do not resemble such examinations in form). Moreover, unlike the examples of testimonial statements given by the Supreme Court, and the ex parte examinations by judicial officers that gave rise to the Confrontation Clause, certificates of no record "are not by their nature accusatory," and they do not "describe past events or facts implicating the defendant in any criminal scheme." Michels, 624 S.E.2d at 469-470. Rather, they merely certify "that a search has been conducted and particular records do not exist." Id. at 470. Such a search reflects a routine practice that might be done "for any number of reasons." Id.

    2.    <u>Business Records, Certificates of Filings, and Prior Convictions Are Admissible in the Wake of Crawford</u>

Although whether a document has been created for trial is an important factor in the analysis of whether it is testimonial, see Crawford, 541 U.S. at 50, a document created for trial does not always implicate the concerns that animated the Confrontation Clause. See, e.g.,

Urqhart, 469 F.3d at 748; Cervantes-Flores, 421 F.3d at 832; Bryant, 2007 WL 1700107, *3; Michels, 624 S.E.2d at 469.  The Supreme Court in Crawford noted that the term "testimonial" applies to prior grand-jury and court testimony and to police interrogations because "these are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed."  541 U.S. at 68.  The Court acknowledged, however, that "'[t]here were always exceptions to the general rule of exclusion' of hearsay evidence;" that several such exceptions "had become well established by 1791;" and that most of those exceptions "covered statements that by their nature were not testimonial – for example, business records or statements in furtherance of a conspiracy."  Id. at 56 (citations omitted).

Historically, the common law admitted certain kinds of certified statements, even though the certificates referred to past events or circumstances and were created for the purpose of being introduced in evidence at trial.  For example, certificates attesting that a document was a true copy of an original found among the public records where such documents are kept were admissible at common law as evidence of the existence and authenticity of a public record.  See Fed. R. Evid. 902(4), Advisory Committee Note ("common law . . . recognized the procedure of authenticating copies of public records by certificate," and the "certificate qualifies as a public document, receivable as authentic when in conformity" with Rules); 5 J. Wigmore, Evidence § 1678, at 863 (Chadbourne rev. ed. 1974).  Such certificates typically were found not to violate a defendant's confrontation rights.  See, e.g., People v. Jones, 24 Mich. 215, 1872 WL 3192 (1872) (certificate by another state's secretary of state authenticating corporate records admissible against confrontation challenge) (citing United States v. Benner, 1 Bald. 234, 24 F. Cas. 1084 (C.C. E.D.Pa. 1830) (No. 14,568) (in federal prosecution for arresting and imprisoning a foreign

minister, certificate that victim had previously been recognized by State Department as attache to the legation of Denmark admissible to prove diplomatic status), and United States v. Liddle, 2 Wash. 205, 26 F. Cas. 936 (C.C. D.Pa. 1808) (No. 15,598) (in federal prosecution for assault on member of a foreign legation, certificate that, before offense occurred, victim had been accredited by the United States government as the charge des affaires of Spain admissible to prove the diplomatic character of victim)).  More recently, in Davis, the Supreme Court identified one of its older cases as not involving "statements of 'witnesses' under the Confrontation Clause," even though the evidence at issue consisted of certified statements by court officials created for purposes of the trial at issue.  See 126 S. Ct. at 2275 (citing Dowdell v. United States, 221 U.S. 325, 330-331 (1911) (among other historically recognized exceptions to general rule of confrontation embodied in the Constitution, "[d]ocumentary evidence to establish collateral facts admissible under the common law, may be admitted in evidence;" thus, certified statements of judge, court clerk, and court reporter regarding conduct at prior trial, which "did not relate to defendants' guilt or innocence," were admissible over Confrontation Clause objection)).

   After Crawford and Davis v. Washington, 126 S.Ct. 2266 (2006), the vast majority of courts has held that certificates authenticating the existence of a public or business record are not testimonial.  See, e.g., United States v. Ellis, 460 F.3d 920, 925 (7th Cir. 2006) (certificate authenticating hospital records was not testimonial; "Given that the records themselves do not fall within the constitutional guarantee provided by the Confrontation Clause, . . . it would be odd to hold that the foundational evidence authenticating the documents do."); United States v. Weiland, 420 F.3d 1062, 1077 (9th Cir. 2005) (certification of prison records by custodian not

testimonial; "a routine certification by the custodian of a domestic public record . . . [is] not testimonial in nature" because such certifications are merely a "'routine cataloging of an unambiguous factual matter'") (internal quotation marks and citation omitted), cert. denied, 547 U.S. 1114 (2006); People v. Schreck, 107 P.3d 1048, 1060-1061 (Colo. App. 2004) (affidavits of judges and court clerks accompanying documentary evidence of appellant's prior convictions not testimonial); State v. Cook, 2005 WL 736671, *4 (Ohio Ct. App. 2005) (affidavit by custodian of records certifying that breathalyzer records were kept in the ordinary course of business was not testimonial because the affidavit "is not evidence against appellant"). As the Colorado Court of Appeals explained:

> Crawford applies to out-of-court statements by witnesses who would have testified at trial to past events or facts, but are attempting to testify ex parte through an affidavit in lieu of live testimony. . . . In contrast, the affidavits at issue here were provided solely to verify the chain of custody and authenticity of the underlying documentary evidence[,] [and] [i]t is the underlying documentary evidence, and not the authenticating affidavits, that reference (and are thus used to prove) the facts material to [the prosecution].

Shreck, 107 P.3d at 1060-1061 (internal citation omitted).

Although certificates of no record were inadmissible at common law, that was not because of concerns about confrontation. Rather, as the Ninth Circuit explained in Cervantes-Flores, the inadmissibility of certificates of no record was based on concerns under the "rule of completeness" with admitting excerpts or selections of documents rather than the entire document or class of documents. See 421 F.3d at 832; 5 Wigmore § 1678, at 867.[3] With respect

---

[3] Cf. United States v. Bukis, 17 F. Supp. 77, 78 (E.D. Pa. 1936) ("[P]roof that something is not to be found in the records may not be made by a mere certificate of the custodian, but is a matter of fact which must be shown by the testimony of a person who has searched the records, with an opportunity to cross-examine.") (citing United States v. Bass, 64 F.2d 467, 470 (7th Cir. 1933) (same); Polk's Lessee v. Wendell, 5 Wheat. 293, 310-311 (1820) (certificate as to nonexistence of entry in public records not competent evidence; production of

to confrontation concerns, however, a certificate of no record is functionally identical to a certificate of existence or authenticity. The former certifies the nonexistence of a particular record among a collection of regularly kept public records, whereas the latter certifies the existence and authenticity of a particular record among the same collection of public records. In either case, the certificate reflects the result of a search of the collection of records, and the underlying records are kept in the ordinary course of business and are not prepared for the purpose of litigation. See Cervantes-Flores, 421 F.3d at 832-833.[4] Therefore, courts generally conclude that "documents establishing the existence or absence of some objective fact, rather than detailing the criminal wrongdoing of the defendant, are not 'testimonial.'" Michels, 624 S.E.2d at 678.[5]

As the Supreme Court said in Crawford, it was the "involvement of government officers in the production of testimony with an eye toward trial" that "presents unique potential for

---

entire record was required, "from which the Court might, by inspection, have ascertained the fact of the non-existence of the contested entries; or from an examination of the keeper of that document as an ordinary witness")).

[4]   Although the certificates at issue in this case were used to demonstrate the nonexistence of a record in litigation, such certificates are not limited to that purpose. The certificate regarding registration of the pistol is a pre-printed form designed to allow the person conducting the records search to indicate that a registration certificate was or was not found (see A-2). Although it is frequently used to establish the nonexistence of such a record, it could as readily be used to establish that an individual had a right to possess a (registered) firearm, such as a rifle, at home, consistent with other laws. See D.C. Code § 7-2502.01. Organizations that employ special police officers might need to obtain such certificates to verify that the weapons they used were registered. Id.

[5]   But see United States v. Wittig, 2005 WL 1227790, *2 (D. Kan. 2005) (certificate of authenticity under Fed. R. Evid. 902(11) was testimonial)(unpublished); People v. Niene, 798 N.Y.S.2d 891, 893-894 (N.Y. City Crim. Ct. 2005) (affidavit of public official who reported that her review of public documents did not find a vendor's license for the defendant was testimonial).

prosecutorial abuse." 541 U.S. at 56 n.7 (emphasis added).  Certificates of no record do not carry that kind of risk.  "The [certificate of no record] certifies the nonexistence of a record within a class of records that themselves existed prior to the litigation, much like business records."  Cervantes-Flores, 421 F.3d at 832.  Although an official "made the certification at the request of [a police officer], the class of records as to whose contents [he or she] prepared [the] certification were created and kept in the ordinary course of [the Firearms Registration Section's] activities, prior to and regardless of [appellant's] prosecution." Id. at 833.  Accord Urqhart, 469 F.3d at 749 ("while [official] created the [certificate of no record] at the request of a federal law-enforcement agent], the underlying subject matter – the absence of a [form indicating permission to re-enter the country] existed" when appellant was first apprehended).  Moreover, the certificates were not prepared in a manner resembling ex parte examinations.  Although prepared at the request of law enforcement, they "were prepared in a non-adversarial setting in which the factors likely to cloud the perception of an official engaged in the more traditional law enforcement functions of observation and investigation of crime are simply not present."  Michels, 624 S.W.2d at 470 (internal quotation marks and citation omitted).  The records official was not asked questions about the defendant or probed for information based on his or her personal knowledge.  Id.

In addition, like the non-testimonial certificates of the judicial officers in Dowdell, certificates relating to the existence or nonexistence of public records are merely collateral to the proceeding; it is the contents of the underlying records that is the evidence against the accused.  The certificates of no license and no registration in this case did no more than establish that certain public records did not exist – a fact which, by itself, has no criminal significance.  The

actions of the searching employee are the same, whether or not the search reveals a record. Because the search is a routine matter, there is no reason to believe that cross examination of the individual who conducted the search would be meaningful. More likely than not, the records employee will have no independent recollection of any particular search, and will rely instead on the certificates themselves, as prior recorded recollections, in order to testify. In addition, to the extent that cross examination hypothetically could establish inaccuracies in the information on which the search was based, a defendant could do that already based on information that appears on the face of the documents; "[i]t is hard to see how cross-examination would add much of substance." United States v. Salinas-Valenciano, 220 Fed. Appx. 879, 883 (10th Cir. 2007) (unpublished). As a result, routinely requiring the testimony of the records searchers will impose significant administrative costs, without introducing any meaningful evidence beyond what is apparent on the face of the challenged certificates of no record. See Crawford, 541 U.S. at 76 (Rehnquist, C.J., concurring in judgment) (to hold business and public records are testimonial would require numerous additional witnesses without any apparent gain in the truth-seeking process); accord Weiland, 420 F.3d at 1077.

Thus, there should be no Confrontation Clause bar to the admission of the tax items, court records, and business records that the Government seeks to admit in this case.

      Respectfully submitted,

      JEFFREY TAYLOR
      United States Attorney
      Bar No. 498-610

      _____

      S. Elisa Poteat

Assistant United States Attorney  
555 4th Street, N.W.  
Washington, DC 20001  
Bar. No. 420-604

                                        _____  
                                        Emory V. Cole  
                                        Assistant U.S. Attorney

CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that I caused a copy of the foregoing to be served upon the attorney for the defendants below on this the \_\_\_ day of September, 2007.

                                        _____  
                                      S. Elisa Poteat  
                                      Assistant United States Attorney

Defense Counsel:
1)    Mr. Howard Bernard Katzoff, Esq.  
       Counsel for Defendant Lawrence Bryant  
       katzoffh@aol.com

2)    Mr. James W. Rudasill, Jr., Esq.  
       Counsel for Defendant John Downs  
       rudasilljr7@aol.com

3)    Mr. Nathan Silver, Esq.

        Counsel for Defendant Darnell Jackson
        nisquire@aol.com

4)    Mr. Rudy Acree, Esq.
       Counsel for Defendant Bernie Hargrove
       Faxed to 202-331-7004

5)    Mr. Jensen Barber, Esq.
       Counsel for Defendant Keith Roots
       jebarber@aol.com

6)    Mr. Gary Sidell, Esq.
       Counsel for Defendant Lanika Mercedes Franklin
       suitcase@verizon.com

7)    Mr. Harry Tun
       Counsel for Defendant Troy Chavious
       Tunharry@aol.com

8)    Mr. Cary Clennon
       Attorney for Defendant Troy Hopkins
       Clennon_law@comcast.net